UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| CLYDE DISEDARE | * | CIVIL ACTION |
|---|---|---|
| VERSUS | * | NO. 22-2680 |
| SGT. COLTER BRUMFIELD, ET AL. | * | SECTION "E" (2) |

**ORDER AND REASONS**

Before this Court is Plaintiff Clyde Disedare's Motion for Finding of Spoliation. ECF No. 46. Defendants Colter Brumfield, Randall Williams, Darryl Mizell, Kevin Luper, and the State of Louisiana though Louisiana Department of Public Safety and Corrections ("DPSC") timely filed an Opposition Memorandum. ECF No. 67. Plaintiff sought leave and filed a Reply Memorandum. ECF Nos. 76-78.

Having considered the record, the argument of counsel, and the applicable law, Plaintiff's motion (ECF No. 46) is DENIED for the reasons stated herein.

I.  **BACKGROUND**

Plaintiff Clyde Disedare filed suit asserting claims under § 1983 and for negligence and respondeat superior liability alleging that he sustained damages from the use of unnecessary and excessive force, retaliation, and negligent supervision and training relating to an incident that occurred while he was incarcerated at Rayburn Correctional Center on March 16-19, 2021. ECF No. 1-1 ¶¶ 6-6, 55-65. Plaintiff alleges that, on March 16, 2021, he received four cans of tobacco through the opening in the Gate to Wind-3, which he placed in his right front pocket before proceeding to his locker. ECF No. 1-1 ¶¶ 5-8. Once at his locker, he opened one can and placed the others in the locker before walking out to the yard and then returning Wind-3. *Id*. ¶¶ 8-9.

Upon his return, Plaintiff tucked his shirt into his pants and tightened his belt, which was deemed suspicious by staff and prompted a shake-down. *Id*. ¶¶ 10-12. Plaintiff was accused of

1

placing something in his rectum; when no contraband was found, he was subjected to multiple body scans and x-rays as well as multiple strip searches. *Id*. ¶¶ 14-29. The officers who reviewed the scans believed they revealed something in Plaintiff's rectum and forced him to take laxatives to induce bowel movements. *Id*. ¶¶ 27-38. When the x-ray technician later reviewed the scans, he determined they were clear, showing only bladder stones. *Id*. ¶¶ 29, 39. Plaintiff contends he was subjected to cruel and unusual punishment when he was placed in the dry cell, subjected to body scans and x-rays, forced to use of laxatives and denied medical care. *Id*. ¶ 47.

## II.   THE MOTION FOR SPOLIATION SANCTIONS

Plaintiff alleges spoliation of video from three additional angles in Wind 3 dorm, video from the walk to the Sun Unit, a portion that was cut off from the produced Wind 3 camera, and Plaintiff's March 16, 2021 body scans. ECF No. 46-2 at 5-6.

Plaintiff demanded preservation of video evidence shortly after the incident. *Id*. at 8.[1] During discovery, Plaintiff sought photos, video or other descriptions of the incident scenes. ECF No. 46-2 at 3. Plaintiff also sought body scan evidence. *Id*. at 1. Defendants initially produced two videos from March 16, 2021, one from the Wind 3 Rear and the other from the Wind 3 TV Room, which Plaintiff contends was cut off and fails to show conduct similar to that described in the UOR. *Id*. at 3, 10. Defendants supplemented the production with six Sallyport body scan images from March 16, 2021 as well as four additional body scans, two from March 17 and two from March 19. *Id*. at 3. That supplement is insufficient, Plaintiff argues, because Defendants appear to have taken someone else's scans and images from March 16 and labelled them with Plaintiff's name. *Id*. at 4-5 (suggesting comparison of the March 16th images with Plaintiff's

---

[1] Plaintiff also contends that DOC regulations require retention of records, and the facility did not have permission to erase video evidence every 30 days. *Id*. at 10-12. Further, he contends that the facility will only preserve evidence when requested by an officer, not when requested by an inmate. *Id*. at 13-14.

images from March 19th). Plaintiff further contends that Defendants produced video from only two cameras in Wind 3 (Rear and TV Room), but failed to produce three other camera angles as well as any video from the walk to the Sun unit. *Id*. at 5-6, 10.

In Opposition, Defendants assert that body scans are only searchable by DOC number, and all body scans associated with a search for Plaintiff's DOC number were produced. ECF No. 67 at 2, 4. Defendants contend that Plaintiff neither specifically requested video from the walk to the Sun Unit nor did any incident allegedly occur on that walk; likewise, the other three camera angles in Wind 3 dorm do not show Plaintiff's bed or have unobstructed views. *Id*. at 3-4. Defendants thus argue that Plaintiff has failed to meet his burden for a finding of spoliation because (1) there was no duty to preserve video footage from camera angles out of view of the relevant events and not reviewed by Officer Williams and during which there were no alleged issues (the walk to the Sun Unit) (*id*. at 6-9), (2) Plaintiff did not establish Defendants acted in bad faith (*id*. at 9-13), and (3) the individual Defendants do not have custody or control over the video allegedly spoliated (*id*. at 13-14).

In Reply, Plaintiff simply reiterates his prior arguments. ECF No. 73.

### III.   APPLICABLE LAW AND ANALYSIS

Allegations of spoliation are addressed in federal courts through either Federal Rule of Civil Procedure 37 (if the alleged spoliation occurs after litigation is instituted) or the court's inherent powers (if the alleged spoliation occurs before suit).[2]

---

[2] FED. R. CIV. P. 37(b), (e); *see also Settles v. United States*, No. 17-1272, 2018 WL 5733167, at *3 (W.D. Tex. Aug. 29, 2018) (citing *Rimkus Consulting Grp. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)); *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 573 (5th Cir. 2020) (citing *Chambers v. NASCO, Inc*., 501 U.S. 32, 43–46 (1991)); *see also Union Pump Co. v. Centrifugal Tech. Inc*., 404 F. App'x 899, 905 (5th Cir. 2010) (citing *Hodge v. Wal–Mart Stores, Inc*., 360 F.3d 446, 449 (4th Cir. 2004) ("The imposition of a sanction ... for spoliation of evidence is an inherent power of federal courts.")).

### A.     <u>Spoliation Standard</u>

The spoliation of evidence doctrine governs the intentional destruction of evidence[3] for the purpose of depriving the opposing party of its use.[4] A spoliation claim has three elements:

(1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction;

(2) the evidence must have been intentionally destroyed; and

(3) the moving party must show that the spoliating party acted in bad faith.[5]

When a party seeks the sanction of an adverse-inference instruction based on spoliation of evidence, that party must establish:

(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed;

(2) the evidence was destroyed with a culpable state of mind; and

(3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.[6]

If the court finds that a party intentionally destroys evidence, the trial court may exercise its discretion to impose sanctions on the responsible party.[7]

---

[3] *Coastal*, 833 F. App'x at 573 (citing *Menges v. Cliffs Drilling Co.*, No. 99-2159, 2000 WL 765082, at *1 (E.D. La. June 12, 2000) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994))).

[4] *Id.* (citing *Catoire v. Caprock Telecomm. Corp.*, No. 01-3577, 2002 WL 31729484, at *1 (E.D. La. Dec. 2, 2002)); *see also St. Tammany Par. Hosp. Serv. Dist. No. 1 v. Travelers Prop. Cas. Co. of Am.*, 250 F.R.D. 275, 277 (E.D. La. 2008) (citation omitted).

[5] *Coastal*, 833 F. App'x at 574 (citing *Port of S. La. v. Tri-Parish Indus.*, 927 F. Supp. 2d 332, 346 (E.D. La. 2013); *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 190 (5th Cir. 2018) (citations omitted)); *see also Eagan v. Walgreen Co.*, No. 21-20352, 2022 WL 683636, at *3 (5th Cir. Mar. 8, 2022) (citations omitted).

[6] *Coastal*, 833 F. App'x at 574 (citing *Rimkus*, 688 F. Supp. at 598).

[7] *Id.* at 573 (citations omitted). The seriousness of the sanctions that a court may impose depends on the consideration of: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *Id.* (quoting *Schmid*, 13 F.3d at 78).

4

### B. <u>Analysis</u>

**1. Duty to Preserve**

The duty to preserve material evidence arises not only during litigation, but also during the period before litigation when a party knew or should have known that litigation was imminent. It does not depend on a court order.[8] A party to litigation has a duty to preserve evidence once "the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant."[9] When a party should reasonably anticipate litigation, it must preserve what it knows, or reasonably should know, is relevant in the action or reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.[10]

The threat of litigation does not, however, obligate an organization to "preserve every shred of paper, every e-mail or electronic document, and every backup tape."[11] While identifying the appropriate scope of litigation hold and its impact on normal document retention policies will vary, a party should identify "key players" and information relevant to the claims and defenses of any party and preserve same.[12] Further, it is not clear that Plaintiff can establish that the individual Defendants had control over the evidence. While it appears that the individual Defendants could have requested that video evidence be maintained, there is no evidence that these defendants controlled the facility's video records retention policies or were involved in the destruction of any video evidence. The lack of evidence of control is even more pronounced for the Sallyport scans.

---

[8] *See Condrey v. SunTrust Bank of Georgia,* 431 F.3d 191, 203 (5th Cir. 2005); *see also Consol. Alum. Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006) (noting that a party must preserve materials that it reasonably knows or can foresee would be material to a legal or potential legal action) (citing *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)).
[9] *Guzman v. Jones,* 804 F.3d 707, 713 (5th Cir. 2015)(citing *Rimkus*, 688 F. Supp. 2d at 612).
[10] *See Mixon v. Pohlman*, No. 20-1216, 2022 WL 2867091, at *5 (E.D. La. July 21, 2022) (citations omitted).
[11] *Zubulake*, 220 F.R.D. at 217 (citation omitted).
[12] *See Consol. Alum. Corp.*, 244 F.R.D. at 339 (citations omitted).

### 2. Intentional Destruction with Culpable State of Mind

The second prong of the analysis is whether the evidence was intentionally destroyed with a culpable state of mind. The "state of mind" spectrum ranges from no culpability through negligence, gross negligence and willfulness to bad faith.[13] While perfection in evidence preservation is no doubt the goal, mere errors or mistakes will not support spoliation sanctions. Although courts in other circuits may impose spoliation sanctions based upon gross negligence, the Fifth Circuit has held that such a sanction may only be imposed upon a showing of "bad faith" or intentional conduct by the spoliating party.[14] Thus, it is insufficient to show that a party acted negligently, rather than intentionally, in spoliating the evidence.[15] Stated otherwise, to establish bad faith or culpable state of mind, the spoliator must act with fraudulent intent and a desire to suppress the truth.[16] Bad faith means more than mere bad judgment or negligence; it implies the conscious doing of a wrong for dishonest and morally questionable motives.[17]

A court does have substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors given that direct evidence of intent rarely exists.[18] Thus, bad faith may be inferred by evidence that a party has misrepresented the existence of documents or allowed the destruction of

---

[13] *Coastal*, 833 F. App'x at 574 (citations omitted).
[14] *Condrey,* F.3d at 203; *King v. Illinois Cent. R.R.,* 337 F.3d 550, 556 (5th Cir. 2003); *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000) (citations omitted); *Lafayette Ins. Co. v. CMA Dishmachines*, No. 03-1098, 2005 WL 1038495, at *3 (E.D. La. Apr. 25, 2005) (A party is not entitled to an adverse inference unless the party can show that its adversary "intentionally and in bad faith disposed of the evidence").
[15] *Condrey* at 573-74 (citations omitted); *see also In the Matter of Lasala*, 542 F. Supp. 3d 439, 444-45 (E.D. La. 2021) (Vitter, J.) (finding no spoliation where movant failed to establish intent to destroy evidence to deprive other party of its use as evidence in litigation).
[16] *Consol. Alum. Corp.,* 244 F.R.D. at 343–44.
[17] *Mixon*, 2022 WL 2867091, at *5 (citations omitted).
[18] *SCF Waxler Marine LLC v. M/V ARIS T*, 427 F. Supp. 3d 728, 768 n. 181 (E.D. La. 2020) (citing *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (discussing intentional destruction in addressing motion for spoliation-of-evidence sanctions) (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir. 2004)), *aff'd*, 24 F.4th 458 (5th Cir. 2022).

documents, and had explanations of spoliation that were not credible."[19] Routine destruction of information, however, is generally not considered spoliation "unless there is a duty to preserve the information," and even then, only when there is also "a culpable breach of that duty, and resulting prejudice."[20] For instance, in *Ralser v. Winn Dixie Stores, Inc*., 309 F.R.D. 391, 397 (E.D. La. 2015), Judge Fallon denied a motion for spoliation sanctions when, despite the destruction of documents during a litigation hold, the documents were destroyed pursuant to a routine document retention policy. Moreover, the mere *potential* loss of evidence as a result of failure to properly institute and effectuate a litigation hold does not rise to the level of bad faith and willful misconduct necessary to support spoliation sanctions under the court's inherent power.[21] Movant must establish that the intentional destruction of relevant evidence was to deprive him of the use of such evidence.[22]

In this case, Plaintiff has not established that the evidence was destroyed with a culpable state of mind. Although intentionally mislabeling the Sallyport scans to replace another inmate's

---

[19] *Mixon*, 2022 WL 2867091, at *5 (citing *Dixon v. Greyhound Lines, Inc*., No. 13-179, 2014 WL 6087226, at *2 (M.D. La. Nov. 13, 2014); *Ashton v. Knight Transp., Inc.,* 772 F. Supp. 2d 772, 802-03 (N.D. Tex. 2011) (recounting purposeful, extensive post-accident misconduct over a sustained period of time by defendant to support inference of bad faith)).
[20] *CAE Integrated, LLC v. Novak*, No. 21-348, 2021 WL 3008296, at *3 (W.D. Tex. June 7, 2021) (citing *Quantlab Techs. Ltd. (BGI) v. Godlevsky*, No. 09-4039, 2014 WL 651944, at *8 (S.D. Tex. Feb. 19, 2014)); *Kostic v. Texas A & M Univ. at Commerce*, No. 10-2265-M, 2013 WL 3356263, at *2 (N.D. Tex. July 3, 2013) (quoting *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007) (citing *Vick v. Tex. Emp. Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975); *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985)); *accord United States v. Ochoa*, 88 F. App'x 40, 42 (5th Cir. 2004) ("Finally, Ochoa has not shown that the district court erred in denying her request that the jury be instructed on spoliation of evidence. The record reflects that the Government did not act in bad faith when it disposed of the crankshaft. Rather, this disposal was done pursuant to a routine policy." (citation omitted)); *King,* 337 F.3d at 556 (explaining that disposing of documents for innocuous reasons, such as destruction "as a part of routine file maintenance" demonstrates that the accused party "lacked a 'bad faith' motive for their destruction")).
[21] *See, e.g*., *Martinez on behalf of Est. of Martinez v. Salazar*, No. 14-534, 2017 WL 4271246, at *5 (D.N.M. Jan. 26, 2017) (denying spoliation sanctions for failure to forward litigation hold letter and properly institute preservation instruction) (citing *Browder v. City of Albuquerque*, No. 13-0599, 2016 WL 3397659, at *4 (D.N.M. May 9, 2016) (declining to find bad faith where defendants made no effort to preserve evidence, but did not intentionally destroy relevant evidence)).
[22] *Coastal*, 833 F. App'x at 573 (citing *Catoire,* 2002 WL 31729484, at *1; *Condrey*, 431 F.3d at 203); *see also Consol. Alum. Corp.,* 244 F.R.D. at 347 (The moving party must provide "some evidence that the documents would have aided it in the manner alleged in their inferences in order" for the court to find relevance and impose sanctions.").

information with Plaintiffs would be indicative of intentional misconduct, Defendants explain that Sallyport images are maintained electronically by DOC number, and they produced all scans associated with Plaintiff's DOC number. It would appear as though there was an error when inputting the Sallyport scans with regard to Plaintiff's March 16, 2021 scans. Such negligence, however, falls short of the required culpable state of mind.

### 3. The Destruction Involved Relevant Evidence Supporting Plaintiffs' Claim

The third factor to consider on a spoliation adverse inference instruction request is the relevance of the evidence. In this case, the relevance of the three destroyed video camera angles is questionable given the camera angles at issue. *See Wright v. National Interstate Insurance Co.*, No. 16-16214, 2017 WL 4011206, at *3 (E.D. La. Sept. 12, 2017) (denying spoliation adverse inference for destruction of video evidence where the parties disputed whether the video captured the incident). Similarly, in light of Plaintiff's receipt of the March 17 and 19, 2021 Sallyport images, which show nothing lodged in Plaintiff's rectum, additional scans showing no obstruction on an earlier date would simply be cumulative of that evidenced by Plaintiff's later images.

### IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' Motion for Spoliation (ECF No. 46) is DENIED for the reasons stated herein.

New Orleans, Louisiana this 1st day of September, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE