UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLYDE DISEDARE,<br>    Plaintiff | CIVIL DOCKET |
| VERSUS | NO.  22-2680 |
| SGT. COLTER BRUMFIELD, ET AL.,<br>    Defendants | SECTION: "E" (2) |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendants Colter Brumfield, Randall Williams, Darryl Mizell, Kevin Luper, and the State of Louisiana.[1] Plaintiff opposed.[2] Defendants replied.[3] For the reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiff Clyde Disedare is incarcerated at Rayburn Correctional Center ("RCC"),[4] where he was held at all times relevant to this action.[5] Defendants in this case are state correctional officers Brumfield, Williams, Mizell, and Luper (collectively, the "Defendant officers"), and the State of Louisiana through the Louisiana Department of Public Safety and Corrections (the "DPSC").[6] Plaintiff alleges that over a four-day period in March 2021, the Defendant officers, suspecting Plaintiff had stored contraband in his rectum, repeatedly ordered him to ingest laxatives, perform bowel movements in full restraints, submit to strip

---

[1] R. Doc. 54. The Court dismissed claims against Defendant Miley Adams from this case without prejudice on December 19, 2022. R. Doc. 13. The Court dismissed claims against Defendant Major Brian Brumfield from this case without prejudice on May 18, 2023. R. Doc. 36.
[2] R. Doc. 69.
[3] R. Doc. 75.
[4] R. Doc. 1-1 at p. 1.
[5] *Id.* at pp. 2–3.
[6] *Id.*

searches, and undergo x-rays.[7] No contraband was found.[8] Plaintiff originally sued in Louisiana state court on July 6, 2022, bringing claims under 42 U.S.C. § 1983 ("Section 1983") and Louisiana state law.[9] Under Section 1983, Plaintiff alleges the Defendant officers violated the Eighth Amendment's prohibition of cruel and unusual punishments by housing him in unconstitutionally unsanitary conditions of confinement,[10] exercising excessive force by corporal punishment,[11] and breaching their duty to protect.[12] Under Louisiana state law, Plaintiff asserts claims of negligence against the Defendant officers and respondeat superior against the DPSC for the alleged tortious acts committed by its employees, the Defendant officers.[13]

On August 16, 2022, Defendants removed the case to this Court from the 22nd Judicial District Court for the Parish of Washington in the State of Louisiana.[14] On July 21, 2023, Defendants filed their motion for summary judgment.[15] In the motion, Defendants move this Court for summary judgment "on the grounds that Defendants are entitled to Qualified Immunity and Plaintiff's [Section] 1983 claims of cruel and unusual punishment, failure to protect, and State law claims of battery and negligence against [the Defendant officers], as well as the State law claims of respondeat superior against DPSC, cannot be supported."[16]

---

[7] *Id.*
[8] *Id.* at pp. 8–9.
[9] *Id.* at p. 1.
[10] Specifically, Plaintiff alleges "[h]e had no hygiene, no shower and he had to eat with unclean hands and an open five gallon bucket of human wa[s]te[] within three (3) feet of his dry cell." *Id.* at p. 9.
[11] Specifically, Plaintiff alleges he "was escorted back to the Sun Unit in shower sandals and full restraints causing injury to his ankles and toes" and "[u]se of the dry cell, scans and multiple body scans, search[es], laxatives and denial of medical care was cruel and unusual punishment." *Id.* at pp. 7, 9.
[12] Specifically, Plaintiff alleges Defendant officers "st[ood] by and allow[ed] the violation of rights/failure to protect." *Id.* at p. 10.
[13] *Id.* at p. 11.
[14] R. Doc. 1.
[15] R. Doc. 54.
[16] R. Doc. 54-1 at p. 1.

## LEGAL STANDARDS

### I. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[17] Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] Indeed, "[i]f the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[19] "An issue is material if its resolution could affect the outcome of the action."[20] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[21] All reasonable inferences are drawn in favor of the nonmoving party.[22] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[23]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[24] Pursuant to Rule

---

[17] FED. R. CIV. P. 56(a).

[18] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[19] *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)).

[20] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[21] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[22] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[23] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[24] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

56(c), the party asserting a fact cannot be or is genuinely disputed must provide support for the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[25]

"The court need consider only the cited materials."[26] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish a genuine issue of material fact does indeed exist.[27]

    If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[28] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary

---

[25] FED. R. CIV. P. 56(c).
[26] FED. R. CIV. P. 56(c)(3).
[27] *Celotex*, 477 U.S. at 322–24.
[28] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 329–35 and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRAC. AND PROC. §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

judgment as a matter of law.[29] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[30] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[31] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[32] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[33]

"[U]nsubstantiated assertions are not competent summary judgment evidence."[34] "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim."[35] "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[36] The party opposing

---

[29] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[30] *Celotex*, 477 U.S. at 332–33.
[31] *Id.*
[32] *Id.* at 332–33, 333 n.3.
[33] *Id.*; *see also First Nat'l Bank*, 391 U.S at 289.
[34] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324).
[35] *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).
[36] *Id.* (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

summary judgment, however, "need not respond to it with affidavits or other evidence 'unless and until the movant has properly carried its burden.'"[37]

## II. Summary Judgment on Qualified Immunity Claims

The doctrine of qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful."[38] Thus, qualified immunity "shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[39] "In resolving questions of qualified immunity at the summary judgment stage, courts engage in a two-pronged inquiry."[40] "The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right."[41] "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation."[42] Courts may address the questions in either order.[43]

Concerning the first prong of the qualified immunity analysis, the defense is "appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court 'skip[s], for the moment, over . . . still-contested matters to consider an issue that would moot their effect if proved.'"[44] "If resolution of [qualified immunity] in the summary judgment proceeding turns on what the defendant actually did, rather than on whether the defendant

---

[37] *Leyman Mfg. Corp. v. U.S.*, 8 Cl. Ct. 535, 544 (Cl. Ct. 1985) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)).
[38] *Saucier v. Katz*, 533 U.S. 194, 206 (2001).
[39] *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[40] *See Tolan v. Cotton*, 572 U.S. 650, 655 (2014).
[41] *Id.* at 655–56.
[42] *Id.* at 656.
[43] *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).
[44] *Hatcher v. Bement*, 14-432, 2015 WL 1511106, at *7 (N.D. Tex. Apr. 3, 2015) (quoting *Harlow*, 457 U.S. at 818; citing *Haverda v. Hays County*, 723 F.3d 586, 599 (5th Cir. 2013)) (alterations in original).

is immunized from liability . . ., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability," then summary judgment is not appropriate.[45] Although summary judgment ultimately may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this "has nothing to do with the qualified immunity defense."[46]

Thus, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and [] defeat a qualified immunity with equal specificity."[47] "Therefore, even where the qualified immunity defense is raised by motion for summary judgment, the Court 'must first determine whether the allegations in [the] complaint are sufficient to negate [the] assertions of qualified immunity.'"[48] This "demands more than bald allegations and conclusory statements."[49] A plaintiff "must allege facts specifically focusing on the conduct of [the defendant] which caused his injury."[50]

With respect to the second prong of the qualified immunity analysis, the U.S. Supreme Court has "'repeatedly told courts . . . not to define clearly established law at a high level of generality.'"[51] At the same time, "this does not mean that 'a case directly on point' is required."[52] Rather, "clearly established" means that the "contours of the right must be sufficiently clear that a reasonable officer would understand that what he was doing violates

---

[45] *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123–24 (5th Cir. 1981)).
[46] *Id.*
[47] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).
[48] *Hatcher*, 2015 WL 1511106, at *7 (quoting *Fleming v. Tunica*, 497 F. App'x 381, 388 (5th Cir. 2012) (alterations in original)).
[49] *Id.* (quoting *Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 995 (5th Cir. 1995)).
[50] *Wicks*, 41 F.3d at 995.
[51] *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).
[52] *Id.* (quoting *al-Kidd*, 563 U.S. at 741–42).

that right."[53] "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."[54] "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."[55] "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding."[56] The Supreme Court recently clarified that "'in an obvious case,' general standards 'can clearly establish the answer, even without a body of relevant case law.'"[57] "[F]or the obvious-case exception, there are two necessary conditions: (1) 'particularly egregious facts' and (2) 'no evidence' that the official's actions 'were compelled by necessity or exigency.'"[58]

## LAW AND ANALYSIS

Plaintiff sued the Defendant officers, in their individual capacities, asserting claims arising out of federal and state law and sued the DPSC asserting a claim under state law.[59] Plaintiff alleges the Defendant officers' conduct "was inhumane, bizarre, obscene, extreme and outrageous"[60] and that the officers "acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate constitutional rights."[61] Specifically, Plaintiff's federal claim under Section 1983 alleges the Defendant officers

---

[53] *Thompson v. Upshur Cnty., Texas*, 245 F.3d 447, 457 (5th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 248).

[54] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985)).

[55] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[56] *Id.*

[57] *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); *Taylor v. Riojas*, 592 U.S. 7 (2020) (per curiam)).

[58] *McMurry v. Brunner*, 21-50888, 2022 WL 17493708, at *8 (5th Cir. 12/7/22) (Oldham, J., concurring) (citing *Taylor v. Riojas*, 592 U.S. 7).

[59] R. Doc. 1-1 at p. 1.

[60] *Id.* at p. 10.

[61] *Id.*

violated his Eighth Amendment rights.[62] Plaintiff's claims under Louisiana state law allege negligence against the Defendant officers and respondeat superior against the DPSC.[63]

In their motion for summary judgment, Defendants argue they "are entitled to Qualified Immunity and Plaintiff's [Section] 1983 claims of cruel and unusual punishment, failure to protect, and State law claims of battery and negligence against [the officers], as well as the State law claims of respondeat superior against DPSC, cannot be supported."[64]

## I. Section 1983 claims must be predicated on an underlying constitutional or statutory violation.

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."[65] Because Section 1983 only provides a remedy for designated rights, "an underlying constitutional or statutory violation is a predicate to liability."[66]

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."[67] The provision is applicable to "some deprivations that [a]re not specifically part of the sentence but [a]re suffered during imprisonment," [68] and embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency," against which courts evaluate penal measures.[69] Courts have long "held repugnant to the Eighth Amendment punishments which are incompatible with 'the evolving standards

---

[62] *Id.*
[63] *Id.* at p. 11.
[64] R. Doc. 54-1 at p.1.
[65] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).
[66] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[67] *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (citing *Robinson v. California*, 370 U.S. 660, 666 (1962)).
[68] *Id.*
[69] *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)); *see also Trop v. Dulles*, 356 U.S. 86, 100 (1958) ("The basic concept underlying the Eighth Amendment is nothing less than the dignity of man.").

of decency that mark the progress of a maturing society,'"[70] and those "which involve the unnecessary and wanton infliction of pain."[71]

The United States Supreme Court and the Fifth Circuit have recognized inmates' claims against prison officials arising under the Eighth Amendment's "cruel and unusual punishments clause" for, inter alia: (1) "deliberate indifference to serious medical needs of prisoners";[72] (2) excessive force or "unnecessary and wanton infliction of pain";[73] (3) breach of "duty to protect prisoners from violence at the hands of other prisoners";[74] (4) "bystander liability" when one officer witnesses a fellow officer violating a prisoner's constitutional rights;[75] and (5) housing prisoners in "deplorably unsanitary conditions" of confinement.[76]

The analysis of Plaintiff's Section 1983 claims "begins by identifying the specific constitutional right allegedly infringed."[77] "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right," rather than to a generalized standard.[78] In this case, Plaintiff's claims are based on alleged violations of his Eighth Amendment rights. Specifically, Plaintiff alleges the Defendant officers violated his Eighth Amendment rights against cruel and unusual punishments by housing him in unconstitutionally unsanitary conditions of confinement,[79] asserting excessive force by corporal punishment,[80] and breaching their duty to protect him from fellow officers (i.e.,

---

[70] *Estelle*, 429 U.S. at 102–03 (citing *Trop*, 356 U.S. at 101; *Gregg v. Georgia*, 428 U.S. 153, 172–173 (1976); *Weems v. United States*, 217 U.S. 349, 378 (1910)).

[71] *Id.* at 103 (citing *Gregg*, 428 U.S. at 173; *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947); *Wilkerson v. Utah*, 99 U.S. 130, 136 (1879)).

[72] *See id.* at 104.

[73] *See Whitley v. Albers*, 475 U.S. 312, 319 (1986).

[74] *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted).

[75] *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

[76] *See Taylor v. Riojas*, 592 U.S. at 8–9.

[77] *Graham*, 490 U.S. at 394.

[78] *Id.*

[79] Specifically, Plaintiff alleges "[h]e had no hygiene, no shower and he had to eat with unclean hands and an open five gallon bucket of human wa[s]te[] within three (3) feet of his dry cell." R. Doc. 1-1 at p. 9.

[80] Specifically, Plaintiff alleges the "[u]se of the dry cell, scans and multiple body scans, search[es], laxatives and denial of medical care was cruel and unusual punishment." *Id.*

bystander liability).[81] In their motion for summary judgment, the Defendant officers argue they "are each individually entitled to qualified immunity" from Plaintiff's Eighth Amendment claims, related to Plaintiff's allegations that "the Defendants subjected him to cruel and unusual punishment," which they describe specifically as "fail[ure] to protect him from other officer's acts or omissions [bystander liability], and use[] [of] excessive force against him."[82]

### A. The Defendant officers did not move for summary judgment on Plaintiff's claim based on unconstitutionally unsanitary conditions of confinement.

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"[83] While the Eighth Amendment protects the safety and wellbeing of convicted prisoners, it "does not mandate comfortable prisons, but neither does it permit inhumane ones."[84] Indeed, it is well established that prison officials cannot deprive prisoners of the "basic elements of hygiene" or the "minimal civilized measure of life's necessities."[85] "[U]nsanitary conditions in a prison cell can, in certain circumstances, rise to the level of cruel and unusual punishment."[86] While "[a] dirty cell does not automatically violate the Constitution,"[87] courts have held "filthy, unsanitary" cells can violate the Eighth Amendment.[88]

---

[81] Specifically, Plaintiff alleges Defendant officers "st[ood] by and allow[ed] the violation of rights/failure to protect." *Id.* at p. 10.

[82] R. Doc. 54-1 at p. 22.

[83] *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

[84] *Id.*

[85] *Palmer v. Johnson*, 193 F.3d 346, 352–53 (5th Cir. 1999).

[86] *Hope v. Harris*, 861 Fed. App'x 571, 584 (5th Cir. 2021).

[87] *Taylor v. Stevens*, 946 F.3d 211, 220 (5th Cir. 2019), *overruled by Taylor v. Riojas*, 592 U.S. 7 (2020).

[88] *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999); *see also Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.").

Plaintiff cites *Taylor v. Riojas*, a recent Supreme Court opinion on conditions of confinement, which Plaintiff contends establishes the clearly established constitutional right violated by his four-day confinement in the unsanitary dry cell.[89] Rather than challenging Plaintiff's version of the facts related to his conditions of confinement claim, Defendants' reply merely attacks Plaintiff's reliance on *Taylor v. Riojas* by attempting to distinguish *Taylor* from the instant case on its facts.[90] Defendants simply argue, "[h]aving to sleep on a mat on top of a dirty rack is not comparable to the facts in *Tayl[o]r*," without any discussion of the other, more deplorably unsanitary, conditions of Plaintiff's confinement.[91]

In his petition, Plaintiff claims the conditions of his four-day confinement in the dry cell deprived him of adequate sanitation and personal hygiene in violation of the Eighth Amendment's proscription of "cruel and unusual punishment."[92] Specifically, Plaintiff claims "he was not allowed any hygiene" and contends his requests "to take a shower or wash his hands" were denied while confined to the dry cell.[93] Consequently, Plaintiff attests, "he had to eat with unclean hands [near] an open five gallon bucket of human [waste]."[94] Concerning the unsanitary conditions of the dry cell, Plaintiff further claims "he [w]as given a thick mat, a turtle blanket, no pillow and told to just lay the mat over the dried blood on the rack."[95]

In Plaintiff's sworn declaration, he declares he had no access to "any hygiene, toothbrush, toothpaste, or soap," "was not allowed to shower," and "was told [he] could not

---

[89] R. Doc. 69 at pp. 7–8 (citing *Taylor v. Riojas*, 592 U.S. 7 (2020)). "No reasonable correctional officer could have concluded that under the circumstances to house *T[a]ylor* in such conditions was constitutionally permissible. The same is true of the multiple searches and dry cell procedure used in this case." *Id.*
[90] R. Doc. 75 at p. 5.
[91] *Id.*
[92] R. Doc. 1-1 at p. 10.
[93] *Id.* at p. 6.
[94] *Id.* at p. 9.
[95] *Id.* at p. 6.

wash his hands" during the four-day period of his confinement in the dry cell.[96] Plaintiff contends the unavailability of cleaning supplies was particularly unsanitary in light of the fact that after completing a bowel movement, he was only allowed "to wipe himself with his hands in cuffs[,] . . . which was messy to say the least."[97] With no ability to wash his hands, Plaintiff declares he "had to eat with unclean hands [near] an open bucket of human waste in front of [the] cell."[98] Plaintiff further declares he was directed to lay atop a mat covering "dried blood on the rack."[99]

Plaintiff clearly identifies his Eighth Amendment claim as a conditions of confinement claim; Defendants' motion requests summary judgment only "on the grounds that [they] are entitled to Qualified Immunity and Plaintiff's [Section] 1983 claims of cruel and unusual punishment [and] failure to protect . . . cannot be supported."[100] Defendants motion for summary judgment on claims, in general, of cruel and unusual punishment is not sufficient to be a motion for summary judgment on  Plaintiff's claim of cruel and unusual punishment based on his unconstitutionally unsanitary conditions of confinement claim.[101]

Qualified immunity is an affirmative defense that must be raised by the defendant.[102] Defendants who file a motion for summary judgment based on qualified immunity to a Section 1983 claim must follow the requirements of Rule 56 just as any other movant would.[103] Under Rule 56, "[a] party may move for summary judgment, identifying each claim

---

[96] R. Doc. 69-5 at pp. 6–8.
[97] R. Doc. 69 at p. 13.
[98] R. Doc. 69-5 at p. 8 ("There was a bigger mess than normal due to ankles being cuffed. I could not position my feet and legs in my natural, normal position. I was told I could not wash my hands with soap and water while in 'Dry Cell #1.' Yet I still had to eat with unclean hands and open bucket of human waste in front of cell.").
[99] *Id.* at p. 6 ("I was told to just lay the mat down over the dried blood, drops and smear.").
[100] R. Doc. 54-1 at p.1.
[101] *See* R. Doc. 54-1.
[102] *Gomez v. Toledo*, 446 U.S. 635, 636 (1980).
[103] Fed. R. Civ. P. 56; *see also Adelsheimer v. Carroll Cnty.*, 639 F. Supp. 3d 699, 703 (N.D. Miss. 2022) ("[I]t is clear that, in choosing to file a summary judgment motion, defendants were required to follow the requirements of the Federal Rules of Civil Procedure relating to such motions.").

or defense—or the part of each claim or defense—on which summary judgment is sought."[104]
Interpreting Rule 56, the Fifth Circuit has stated that "[i]n order to determine whether
summary judgment is proper, it is first necessary to analyze the legal result sought to be
compelled."[105] "Only by analyzing the legal result can [the Court] determine what facts must
be established and whether those facts are in genuine dispute."[106] Indeed, the party seeking
summary judgment always bears the initial burden of informing the court of the legal basis
of its motion and identifying the specific portions of the pleadings or filings it believes
demonstrate the absence of any genuine issue of material fact.[107] "[T]he substantive law will
identify which facts are material" and relevant to the motion for summary judgment.[108] This
is as true in a Section 1983 case as in any other case.[109]

Defendants do not identify Plaintiff's conditions of confinement as a claim on which
they are seeking summary judgment. Defendants do not include any facts related to this
claim in their Statement of Uncontested Facts.[110] Nor do they argue they are entitled to
judgment as a matter of law on this claim. Instead, the Defendants ignore this specific claim
and speak broadly of cruel and unusual punishment. This approach is contrary to the
Supreme Court's direction that the analysis must begin by identifying the specific
constitutional right at issue. Defendants failed to move the Court for summary judgment on
the issue of qualified immunity as it relates specifically to Plaintiff's Eighth Amendment
conditions of confinement claim. As a result, the question of whether qualified immunity

---

[104] FED. R. CIV. P. 56(a).
[105] *Irwin v. United States*, 558 F.2d 249, 251 (5th Cir. 1977).
[106] *Id.*
[107] *Celotex*, 477 U.S. at 323; *see also Coleman v. Town of Brookside*, 637 F. Supp. 3d 1290, 1295 (N.D. Ala. 2022) ("The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact." (citing *Celotex*, 477 U.S. at 323)).
[108] *Anderson v. Liberty Lobby*, 477 U.S. at 247.
[109] *See Tolan v. Cotton*, 572 U.S. 650 (2014).
[110] *See* R. Doc. 54-14.

shields the Defendant officers from liability on the conditions of confinement claim is not even before the Court. Absent such a motion, and an accompanying statement of undisputed material facts, with record citations, Defendants cannot possibly have demonstrated that no material facts are in dispute or that as a result they are entitled to judgment as a matter of law on that claim.[111]

Defendants' mere conclusory assertion that "Plaintiff was not subjected to Cruel and Unusual Punishment"[112] does not satisfy their initial burden under Rule 56(c). Rule 56(c) requires a party asserting that a fact is not in dispute to support that assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[113] "The moving party bears the burden of showing the district court that there is an absence of evidence to support the nonmoving party's case."[114] The Court cannot simply take Defendants' word for it.[115]

The fact that Defendants are moving for summary judgment *on a qualified immunity defense* does not entitle them to more lenient standards when asserting a motion for summary judgment than those required by Rule 56.[116] The party seeking summary judgment "*always* bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes

---

[111] *See* R. Doc. 54-1.
[112] *Id.* at p. 13.
[113] Fed. R. Civ. P. 56(c)(1).
[114] *Kee*, 247 F.3d at 210 (citing *Celotex*, 477 U.S. at 325).
[115] *See Adelsheimer*, 639 F. Supp. 3d at 703 ("Rule 56(c) required defendants to cite 'to particular parts of materials in the record, including depositions, documents' or other admissible summary judgment evidence. This court cannot simply take their word for it.").
[116] *See Tolan*, 572 U.S. at 660; *see also Adelsheimer*, 639 F. Supp. 3d at 703 ("[T]his court emphasizes that the mere fact that a defendant is asserting a qualified immunity defense entitles him to no more lenient standards when asserting a summary judgment motion under Rule 56.").

demonstrate the absence of a genuine issue of material fact."[117] "[T]here is no separate Rule 56 for qualified immunity defendants" in Section 1983 cases.[118] Courts are required "to view the evidence at summary judgment in the light most favorable to [the plaintiff] with respect to the central facts of th[e] case."[119] In this case, Defendants included no statements of undisputed material fact relating to Plaintiff's unsanitary conditions of confinement claim; the Court must consider the facts alleged by Plaintiff as true.

The Supreme Court reversed a lower court's granting of summary judgment on a Section 1983 claim involving officer misconduct when the officers failed to include statements of undisputed material fact that addressed all facts that were material to the claim.[120] In *Adickes v. S.H. Kress & Co.*, a white school teacher sued the owner of a restaurant for denying her service and subsequently conspiring with law enforcement to arrest her.[121] The Supreme Court ultimately found the defendant "failed to fulfill its initial burden of demonstrating what is a critical element . . . of the case," when affidavits of the officers involved in the Section 1983 claim failed to "foreclose the possibility" that they were present in the store while the plaintiff was there and that they communicated with restaurant staff to influence the decision to not serve her.[122] "Given these unexplained gaps in the materials submitted" by the defendant, the Court determined the defendant did not refute material facts offered by the plaintiff and reversed the lower court's granting of summary judgment.[123]

---

[117] *Celotex*, 477 U.S. at 323 (emphasis added).
[118] *Adelsheimer*, 639 F. Supp. 3d at 703 (interpreting *Tolan v. Cotton*, 572 U.S. 650 (2014)).
[119] *Tolan*, 572 U.S. at 657.
[120] *See Adickes*, 398 U.S. 144 (1970).
[121] *Id.* at 146.
[122] *Id.* at 158 (citing FED. R. CIV. P. 56(c)).
[123] *Id.* (quoting 6 J. MOORE, FED. PRAC. 56.22(2), at 2824–25 (2d ed. 1966) ("Yet the party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden then he is not entitled to judgment. No defense to an insufficient showing is required.")).

In their motion for summary judgment, Defendants do not even identify conditions of confinement as a claim on which they are seeking summary judgment based on qualified immunity. Defendants fail their initial burden of informing the Court of the legal basis of their motion.[124] The Defendants do not demonstrate the facts concerning the critical elements of the claim are undisputed and that they are entitled to judgment as a matter of law. As in the *Adickes* case, their affidavits do not foreclose the possibility that they were involved in denying Plaintiff adequate sanitation and personal hygiene while he was confined to the dry cell. As a result, Defendants failed to satisfy their initial burden under Rule 56(c), which requires the moving parties to cite with specificity to materials in the record that show the absence of a genuine dispute of material fact with respect to the claims made by the Plaintiff.[125] The Court cannot construe Defendants' general invocation of qualified immunity as encompassing Plaintiff's unconstitutional conditions of confinement claim. To do so would improperly "credit[] the evidence of the party seeking summary judgment and fail[] properly to acknowledge key evidence offered by the party opposing that motion."[126]

Defendants' Statement of Uncontested Facts does address the factual bases of the claims based on excessive force and bystander liability, for which they also seek summary judgment. This serves to point out Defendant officers' failure to do so with respect to the unsanitary conditions of confinement claim.[127] Rather, the only summary judgment evidence offered by Defendants even remotely relevant to the conditions of confinement claim is that "Plaintiff was offered liquids and a bathroom break every two hours and his cell

---

[124] *See Celotex*, 477 U.S. at 323; *see also Coleman*, 637 F. Supp. 3d at 1295.
[125] *See* FED. R. CIV. P. 56(c); *Tolan*, 572 U.S. at 657, 660; *Adelsheimer*, 639 F. Supp. 3d at 703.
[126] *See Tolan*, 572 U.S. at 659.
[127] *See* R. Doc. 54-14.

search was per policy" on March 17, 18, and 19, 2021.[128] These facts, even if true, do not establish that there are no disputed issues of material fact with respect to Plaintiff's unconstitutionally unsanitary conditions of confinement claim.

The Defendant officers are not entitled to summary judgment on their qualified immunity defense against Plaintiff's unconstitutional conditions of confinement claim.[129]

## B. The Defendant officers are entitled to summary judgment on Plaintiff's excessive force claim.

In addition to unconstitutional conditions of confinement, the Eighth Amendment's prohibition of cruel and unusual punishment also protects individuals from "unnecessary and wanton infliction of pain."[130] In determining whether specific conduct rises to the level of "excessive physical force," courts first evaluate whether the deprivation was objectively serious in light of "contemporary standards of decency."[131] Next, courts consider whether the officials acted with "a sufficiently culpable state of mind."[132] Generally, prison officials are liable for an inmate's claim of excessive force "[w]hen [they] maliciously and sadistically use force to cause harm, [and thereby violate] contemporary standards of decency."[133] "This is true whether or not significant injury is evident [because,] [o]therwise, the Eighth

---

[128] *Id.* at pp. 3–5 (citing DPSC Unusual Occurrence Reports, March 16–19, 2021; R. Doc. 54-7 at pp. 4, 5, 7, 8, 10).

[129] The Court refrains from determining the viability of Plaintiff's unconstitutional conditions of confinement claim, but observes Plaintiff identifies a clearly established constitutional right against "deplorably unsanitary conditions [of confinement]." *See Taylor v. Riojas*, 592 U.S. at 8–9. Plaintiff further identifies a genuine issue of material fact as to the Defendant officers' deliberate indifference to his unconstitutional conditions of confinement. *Compare* R. Doc. 69 at p. 12 (alleging Defendant Brumfield "escorted [Plaintiff] to Dry Cell #1 solitary confinement in the Sun Unit," and callously stated to him: "I do not care if you push hard enough to get hemorrhoids or even blow your asshole out. I don't care, I do not care about you."), *with Taylor v. Riojas*, 592 U.S. at 9 (finding "the record suggests that at least some officers involved in Taylor's ordeal were deliberately indifferent to the conditions of his cells" when "upon placing Taylor in the second cell, an[] officer told Taylor he hoped Taylor would 'f***ing freeze'"). However, because Defendants do not move for summary judgment on this claim, the Court need not address the application of qualified immunity to the Defendant officers, individually.

[130] *Ingraham v. Wright*, 430 U.S. 651 (1977).

[131] *See Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992).

[132] *Id.* at 8.

[133] *Id.* at 9 (citing *Whitley v. Albers*, 475 U.S. at 327).

Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."[134] While the Fifth Circuit requires an injury to "be more than de minimis," it "need not be significant."[135] However, "when authorities use force to put down a prison disturbance," the excessive force inquiry turns on "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"[136]

In this case, Plaintiff claims certain conduct of the Defendant officers' constituted "corporal punishment[,] unnecessary[,] and/or excessive force" in violation of the Eighth Amendment's proscription of "cruel and unusual punishment."[137] Specifically, Plaintiff claims the Defendant officers applied excessive force against him when they: (1) subjected him to several body scans and conducted strip searches of him "solely to harass or to inflict pain and suffering";[138] and (2) "forced [him] to walk with shackles too tight causing injury to his feet" and "forced [him] to use laxatives to have bowel movement[s] in a bucket (5 times) with bloody rectum."[139]

Unlike Plaintiff's conditions of confinement claim, Defendants included in their Statement of Uncontested Facts those that they believe foreclose the possibility they exercised constitutionally impermissible excessive force on Plaintiff. Specifically, addressing the factual allegations underlying Plaintiff's excessive force claim, the Defendant officers

---

[134] *Id.*

[135] *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999).

[136] *Hudson v. McMillian*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. at 320-21).

[137] R. Doc. 1-1 at p. 10; R. Doc. 69 at pp. 29–30.

[138] R. Doc. 69 at p. 5. In his petition, Plaintiff alleges Defendants subjected him to cruel and unusual punishment when they forced him to walk "to the Sun Unit in shower sandals and full restraints causing injury to his ankles and toes[,]" "[u]se[d] [] the dry cell, scans and multiple body scans, search[es], laxatives[,] and deni[ed] [him] medical care." R. Doc. 1-1 at pp. 7, 9.

[139] R. Doc. 69 at p. 30. Plaintiff also attests "the dry cell is a corporal punishment chamber." *Id.* at p. 29. Specifically, Plaintiff claims the Defendant officers inflicted corporal punishment upon him by requiring he be "[i]n full restraints while having bowel movements and refusing to [] allow[] [him] to wash his hands [afterwards]," and "forc[ing] [him] to sleep on a bunk with dried blood present." *Id.* These allegations are more relevant to Plaintiff's conditions of confinement claim and are, thus, discussed in that analysis.

represent: (1) they "scanned [Plaintiff] by the body scanner . . . due to reasonable suspicion that [he] was in possession of contraband" and "conducted the visual body cavity search of Plaintiff" under the same suspicion;[140] (2) "Plaintiff was escorted to the A-Building Body Scanner and [after he] was scanned[,] . . . was returned to his dry cell";[141] and (3) "[a]t no time during their interactions with Plaintiff, did any of the individual Defendants ever order Plaintiff to take a laxative or give him a laxative," noting that "administering laxatives are not part of the Dry Cell procedures."[142] Because Defendants satisfied their initial burden of informing the Court of the legal basis of their motion under Rule 56(c) with respect to their qualified immunity against Plaintiff's excessive force claim,[143] "the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law."[144]

### 1. *Plaintiff failed to identify a clearly established constitutional right that protects him against the Defendant officers' alleged exercise of improper excessive force.*

Plaintiff failed to satisfy his burden to overcome qualified immunity on his excessive force claim because he did not identify a clearly established Eighth Amendment right that protects him against the Defendant officers' alleged exercise of improper force. In evaluating Defendants' assertion of qualified immunity against Plaintiff's excessive force claim, the Court first addresses the second prong of the inquiry, which asks "whether the right was clearly established at the time of the violation."[145] As discussed, the relevant right may not

---

[140] R. Doc. 54-14 at p. 2. In further support of their reasonable suspicion, Defendants claim it is undisputed that "[a]fter Plaintiff was scanned, Defendant Williams could clearly see an object inside Plaintiff's body." *Id.*
[141] *Id.* at p. 3.
[142] *Id.* at p. 5.
[143] R. Doc. 54-1 at p. 22. Defendant officers assert the qualified immunity defense against Plaintiff's claim that they "used excessive force against him when Plaintiff was put on dry cell restrictions, placed in the body scanner, subjected him to searches, allegedly forced him to take laxatives, and denied him medical care." *Id.*
[144] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (quoting *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 866, 872 (5th Cir. 1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.")).
[145] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

be defined at "a high level of generality."[146] Rather, "[t]he dispositive question is whether the violative nature of a *particular* conduct is clearly established."[147] While a case directly on point is not required, an evaluation of existing precedent must place the constitutional question "beyond debate."[148] The "salient question," therefore, is whether Defendants had "fair warning" that their specific actions were unconstitutional.'"[149] Plaintiffs' excessive force claim alleges the Defendant officers: (1) improperly conducted strip searches and body scans to humiliate him; and (2) forced him to take laxatives and to walk with shackles, which caused injuries to his rectum and to his feet and ankles, respectively.[150] As discussed below, under Fifth Circuit law, the Eighth Amendment does not protect Plaintiff against the Defendant officers' conduct underlying these claims of excessive force.

First, Plaintiff alleges Defendants conducted several body scans and strip searches merely "to harass or to humiliate" him in violation of the Eighth Amendment.[151] Specifically, Plaintiff alleges the strip searches and body scans conducted by the Defendant officers, "who seemed to think the matter was humorous,"[152] "were calculated to humiliate [him] and had no penological purpose."[153] Plaintiff cites Supreme Court cases *Hudson v. Palmer* and *Bell v. Wolfish*, which he contends established his right against "searches conducted solely to harass or to humiliate."[154] In their reply, Defendants argue *Palmer* and *Bell* do not establish

---

[146] *Morgan*, 659 F.3d at 372 (quoting *al-Kidd*, 563 U.S. at 742).
[147] *Mullenix v. Luna*, 577 U.S. 7, 10 (2015) (per curiam) (quotation marks omitted).
[148] *al-Kidd*, 563 U.S. at 741.
[149] *Hope v. Pelzer*, 536 U.S. at 731.
[150] R. Doc. 69 at p. 5.
[151] *Id.*; R. Doc. 1-1 at pp. 4–6.
[152] R. Doc. 1-1 at p. 5.
[153] R. Doc. 69 at p. 36.
[154] *Id.* at p. 5 (first citing *Hudson v. Palmer*, 468 U.S. at 530 ("Calculated harassment unrelated to prison needs is forbidden by the Constitution." R. Doc. 69 at p. 33); then citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Plaintiff also cites *Oliver v. Scott* for the proposition that the Fifth Circuit established a constitutional right to bodily privacy for prisoners. *Id.* (citing *Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2002)). In *Oliver*, the civil rights plaintiff alleged prison employees violated "his rights to privacy, right to freedom from unreasonable search and seizure, and right to equal protection under the Fourth and Fourteenth Amendments." *Oliver*, 276 F.3d at 740. Because the Plaintiff in this case alleged the Defendant officers violated only his Eighth Amendment rights,

a constitutional right against the officers' alleged conduct because "Defendants' actions here were aimed at . . . seeking out and searching for potentially deadly contraband." [155] Defendants claim that, under *Bell*, "visual body cavity searches are appropriate even when devoid of probable cause when done in an effort to ensure security and order at the institution," and contend the officers reasonably believed Plaintiff was "in possession of contraband."[156]

This Court agrees with Defendants and finds *Bell* and *Palmer* do not establish a clear constitutional right against excessive force that protects Plaintiff against the Defendant officers' allegedly improper strip searches and body scans. The Fifth Circuit has "refused to extend the Eighth Amendment to strip searches."[157] Further, evaluating a strip and visual body cavity search of an inmate under the Eighth Amendment in *Parker v. Woods*, the Fifth Circuit held that prison officials did not violate an inmate's constitutional rights when they conducted a search to ensure the inmate did not conceal potentially dangerous items on or in his body even when the inmate alleged the search was conducted in a "humiliating and degrading manner." [158] Accordingly, under Fifth Circuit law, Plaintiff has no Eighth Amendment right against the strip searches or body scans underlying his excessive force claim.

Second, Plaintiff alleges Defendants forced him to walk "1/4 mile back to the Sun Unit in shower sandals and ankle cuffs that were too tight [and] very painful," which caused "[b]oth of his big toes and his ankles [to] bleed,"[159] and "forced [him] to use laxatives to have

---

this Court will refrain from analyzing the merits of Plaintiff's purported clearly established right to privacy under the Fourth or Fourteenth Amendments. *See* R. Doc. 1-1 at p. 10.

[155] R. Doc. 75 at p. 3.

[156] *Id.* (citing *Bell*, 441 U.S. at 561).

[157] *Oliver*, 276 F.3d at 743 n.9 (citing *Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir. 1999)).

[158] *Parker v. Woods*, 834 Fed. App'x 92, 95–97 (5th Cir. 2020).

[159] R. Doc. 69 at p. 14; R. Doc. 1-1 at p. 7.

bowel movement[s] . . . with [a] bloody rectum."[160] Quoting *Hudson v. McMillian*, Plaintiff contends "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury."[161] Defendants claim "Plaintiff did not suffer an injury greater than de minimis"[162] and argue "if any force was used on Plaintiff, it was applied in a good-faith effort to maintain and restore discipline and was not used maliciously and sadistically to cause harm."[163] Defendants further contend Plaintiff's medical records "do not support that he was injured at all while he was assigned to [the] dry cell."[164]

The Court agrees with Defendants and finds that *Hudson* does not establish a clear constitutional right against excessive force that protects Plaintiff from the type of physical force allegedly asserted by the Defendant officers. In the Fifth Circuit "some physical injury is an indispensable element" to sustain a claim of excessive force.[165] While an injury "need not be significant," it must "be more than de minimis."[166] For example, the Fifth Circuit held a prisoner did not raise a valid Eighth Amendment claim for excessive use of force because his alleged injury of a "sore, bruised ear lasting for three days" after an officer twisted his ear was not sufficiently extensive.[167] Similarly, the court determined a detainee failed to demonstrate "a legally cognizable injury" when he alleged "fleeting dizziness, temporary loss of breath[,] and coughing" after an officer choked him.[168] Further, the Fifth Circuit held that a plaintiff's alleged wrist injury after an "officer put . . . handcuffs on her too tightly, causing

---

[160] R. Doc. 69 at p. 30; R. Doc. 1-1 at pp. 9-10.
[161] R. Doc. 69 at p. 35 (quoting *Hudson v. McMillian*, 503 U.S. at 4).
[162] R. Doc. 54-1 at p. 19.
[163] *Id.* at p. 21.
[164] *Id.* at p. 19 (citing Plaintiff's Medical Records at R. Doc. 54-9).
[165] *Gomez v. Chandler*, 163 F.3d at 923 (citing *Knight v. Caldwell*, 970 F.2d 1430, 1432–33 (5th Cir.1992)).
[166] *Id.* at 923–24.
[167] *Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir. 1997).
[168] *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999), *decision clarified on reh'g*, 186 F.3d 633 (5th Cir. 1999).

her wrist to swell" was insufficient to support her claim of excessive force.[169] In this case, the Plaintiff allegedly sustained physical injury to his ankles, toes, and rectum during his four-day period of confinement in the dry cell ending March 19, 2021. RCC's medical records indicate Plaintiff did not complain about these injuries to any medical provider after his release from the dry cell nor did he raise them during his annual physical examination by Dr. Robert Cleveland six days after he was released from the dry cell on March 25, 2021.[170] Thus, even if Plaintiff's allegations of forceful conduct are true, Plaintiff is not protected from the alleged physical injuries by the Eighth Amendment under Fifth Circuit law.

Accordingly, Plaintiff has failed to identify a clearly established constitutional right against excessive force for the Defendant officers' improper conduct. Because he failed to satisfy the second prong of the qualified immunity analysis, Defendants' motion for summary judgment on the issue of qualified immunity with respect to Plaintiff's claim of excessive force will be granted.[171]

### C. The Defendant officers are entitled to summary judgment on Plaintiff's bystander liability claim for failure to prevent an excessive use of force; the Defendant officers are not entitled to summary judgment on Plaintiff's bystander liability claim for failure to prevent unconstitutional conditions of confinement.

"Under the Eighth Amendment to the United States Constitution, a defendant security officer may be found responsible for a failure to intervene and take reasonable measures to protect an inmate from another officer's use of excessive force under a theory of bystander liability."[172] "An officer is liable for failure to intervene when that officer: (1)

---

[169] *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

[170] R. Doc. 54-9 at pp. 100–11. The records of Plaintiff's annual physical examination by Robert Cleveland, MD on March 25, 2021 indicate Plaintiff denied that he was experiencing any pain and specifically denied he was experiencing pain related to his musculoskeletal and gastrointestinal systems. *Id.* at pp. 100–01.

[171] Because Plaintiff did not identify a clearly established constitutional right that protects him from any conduct of the Defendant officers he argues is excessive force, the Court need not discuss the application of qualified immunity to the Defendant officers, individually.

[172] *LeBouef v. Hardy*, 21-556, 2022 WL 17332573, at *3 (M.D. La. Oct. 31, 2022)

24

knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act."[173] "In resolving whether a plaintiff has sufficiently alleged a bystander liability claim we also consider whether an officer 'acquiesced in' the alleged constitutional violation."[174]

In this case, Plaintiff alleges "rampant and widespread cronyism . . . causes or contributes to the [RCC] staff sticking together and covering for one another."[175] Specifically, Plaintiff alleges the Defendant officers "st[ood] by and allow[ed] the violation of rights/fail[ed] to protect [him from other officers]."[176] Defendants argue they were "clearly in compliance with DPSC policy and procedures" and cannot be liable under a theory of bystander liability "because none of Plaintiff's rights were violated and no harm was present."[177]

In the Fifth Circuit, a finding of bystander liability presumes the existence of a constitutional right.[178] As discussed above, Plaintiff has not satisfied his burden of identifying a constitutional right to sustain his Eighth Amendment excessive force claim. Thus, the Court will grant Defendants' motion for summary judgment on qualified immunity with respect to Plaintiff's bystander to excessive force claim.

Defendants did not move for summary judgment on Plaintiff's Eighth Amendment unconstitutional conditions of confinement claim. The Court will deny Defendants' motion for summary judgment on Plaintiff's bystander to conditions of confinement claim.

---

[173] *Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020).
[174] *Whitley v. Hanna*, 726 F.3d at 647 (citations omitted).
[175] R. Doc. 1-1 at p. 9.
[176] *Id.*
[177] R. Doc. 54-1 at p. 26.
[178] *Joseph*, 981 F.3d at 343.

**II. Summary judgment will be denied on Plaintiff's state law claim based on negligence; Plaintiff's state law claim against DPSC based on respondeat superior will be dismissed for lack of subject matter jurisdiction.**

In his petition, Plaintiff asserts two claims under Louisiana state law against the Defendant officers and the State of Louisiana, through the DPSC.[179] Specifically, Plaintiff seeks relief under article 2315 of the Louisiana Civil Code for the negligent acts and/or omissions of the Defendant officers and asserts a claim against the State for employer liability under a theory of respondeat superior.[180]

### A. *The Defendant officers are not entitled to summary judgment on Plaintiff's negligence claims based on the Louisiana discretionary immunity statute.*

In his petition, Plaintiff "seeks relief under [article] 2315 of the Louisiana Civil Code [for] injuries [that] were occasioned by the intentional and/or negligent acts and/or omissions of the Defendant[] [officers], and, in the alternative, for intentional infliction of emotional distress."[181] Plaintiff specifically alleges the Defendant officers breached their duty of care by engaging in the following "unreasonable conduct": (1) violating "the standard of care for health care at a correctional facility"; (2) inflicting corporal punishment on Plaintiff "in violation of a state statute"; and (3) disregarding the "use of force policies and procedures published by DOC and RCC."[182] Plaintiff's petition likewise alleges the Defendant officers breached their duty of reasonable care by subjecting him to unsanitary conditions of confinement in the dry cell.[183]

---

[179] *See* R. Doc. 1-1. Although the letter submitted by Plaintiff's counsel to the Court on January 17, 2023 also identifies a "State Court Battery" cause of action asserted against the Defendant officers, Plaintiff's petition filed in Louisiana state court does not state any claim of battery. *Compare* R. Doc. 15, *with* R. Doc. 1-1. Accordingly, the Court will not analyze the merits of Defendants' argument on whether qualified immunity shields the Defendant officers from liability on Plaintiff's purported battery claim. *See* R. Doc. 54-1 at pp. 33–35.

[180] R. Doc. 1-1 at p. 11.

[181] *Id.*

[182] *Id.* at pp. 9–10.

[183] *See* R. Doc. 1-1.

In their answer to Plaintiff's petition[184] and in their motion for summary judgment, the Defendant officers assert Louisiana statutory immunity shields them from liability for Plaintiff's state law negligence claims.[185] Louisiana Revised Statutes 9:2798.1 exempts "public entities or their officers or employees" from liability for "the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties."[186] Defendants acknowledge there is an exception to the statutory immunity under Louisiana Revised Statutes 9:2798.1(C)(2), which forecloses the affirmative defense for acts or omissions that constitute "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."[187] However, Defendants incorrectly claim the applicability of this exception is "*the* question before this Honorable Court on Defendants' motion for summary judgment" and that "[i]n order for Plaintiff to defeat Defendants' claim of discretionary immunity, it is incumbent upon him to put forth evidence showing that the conduct of the defendant rose to the level of misconduct required by Louisiana Revised Statutes 9:2798.1(C)(2)."[188]

Defendants not only mischaracterize their subjective intent to be the single salient issue for determining the applicability of the discretionary immunity statute, but they also improperly try to shift the burden to Plaintiff to prove the affirmative statutory immunity defense does not apply. Citing one unpublished opinion of the Louisiana First Circuit Court of Appeal, Defendants argue "[o]nce a public official raises the defense of [statutory]

---

[184] In their answer, Defendants explicitly pled the affirmative defense of "discretionary act immunity pursuant to La. R.S. 9:2798.1." R. Doc. 4 at p. 2.
[185] R. Doc. 54-1 at p. 35 (citing La. R.S. § 9:2798.1).
[186] La. R.S. § 9:2798.1.
[187] R. Doc. 54-1 at p. 35 (citing La. R.S. § 9:2798.1(C)(2)).
[188] *Id.* at p. 37 (citing *Marshall v. Sandifer*, 17-1246, p. 9 (La. App. 1 Cir. 9/21/18), 2018 WL 4520245, at *5).

immunity, the burden rests on the plaintiff to rebut it."[189] To the contrary, Louisiana law is clear that "[t]he immunity offered by Louisiana's discretionary immunity statute is . . . an affirmative defense which must be specifically pleaded in the defendant's answer."[190] "As such, the *defendant* bears the burden of proving that this statutory immunity applies."[191] Indeed, unlike Defendants' qualified immunity defense against Plaintiff's claims arising under the U.S. Constitution, in Louisiana "[t]he government has the burden of proving the [statutory] immunity [defense] applies as the exception is in derogation of the Louisiana Constitution's waiver of sovereign immunity."[192]

Because the burden is on the Defendants, the proper inquiry at the summary judgment stage is whether Defendants show there is no genuine issue of material fact as to the elements of their affirmative statutory immunity defense and that they are entitled to judgment as a matter of law.[193] In determining whether statutory immunity shields a defendant from tort liability, Louisiana courts employ a two-step test:

> First, if a statute, regulation, or policy prescribes a particular course of action, there is no choice or discretion involved, and the immunity does not apply. However, when discretion is involved, a court must then determine whether that discretion is the kind that is shielded by the statutory immunity, that is, discretion grounded in social, economic or political policy.[194]

"The immunity statute does not protect operational governmental decisions, but only confers immunity for discretionary decisions based on social, economic, or political concerns."[195] "In other words, when the government acts negligently for reasons unrelated

---

[189] *Id.* (citing *Trantham v. City of Baker*, 10-1695, p. 4 n.7 (La. App. 1 Cir. 3/25/11), 2011 WL 1103628, at *4).
[190] *Asante-Chioke v. Dowdle*, 22-4587, 2023 WL 5630464, at *6 (E.D. La. Aug. 31, 2023) (citing *White v. City of New Orleans*, 00-2683, p. 2 (La. App. 4 Cir. 1/9/01), 806 So. 2d 675, 677).
[191] *Id.* (emphasis added) (citing *Johnson v. Orleans Par. Sch. Bd.*, 06-1223 (La. App. 4 Cir. 1/30/08), 975 So. 2d 698, 710 (finding municipal housing authority and school board had burden to prove affirmative defense of discretionary immunity by a preponderance of the evidence)).
[192] *Batton v. Georgia Gulf*, 261 F. Supp. 2d 575, 600 n.21 (M.D. La. May 6, 2023).
[193] *See* FED. R. CIV. P. 56(c).
[194] *Addington v. Wells*, 2023 WL 2808466 (5th Cir. Apr. 6, 2023) (citing *Aucoin v. Larpenter*, 20-0792, pp. 13–14 (La. App. 1 Cir. 4/16/21), 324 So. 3d 626, 637–38).
[195] *Aucoin*, 20-0792, p. 14, 324 So. 3d at 638.

to public policy considerations, it is liable to those it injures."[196] Thus, for Defendants to prevail on summary judgment, they must demonstrate their conduct was consistent with the course of action prescribed by a policy or, absent a policy on point, was discretionary and grounded in a social, economic, or political policy, by citing to materials in the record for support.

In this case, Defendants failed to satisfy their burden because they included no statements of undisputed material fact demonstrating their conduct complied with any specific policy or procedure that prescribes a course of action. Nor did they include statements of undisputed material facts demonstrating they exercised reasonable discretion with respect to a specific social, economic, or political policy that involved choice or discretion. Instead, Defendants merely made conclusory assertions that the Defendant officers "followed DPSC policy and procedures when investigating Plaintiff, which included the use of a visual body cavity search, body scanner scans, and the placement on dry cell restrictions."[197]

Accordingly, Defendants have not met their burden of showing there are no material facts in dispute and they are entitled to discretionary immunity from tort liability as a matter of law. Their motion for summary judgment on the issue of discretionary immunity with respect to Plaintiff's state law negligence claims will be denied.

### B. The State of Louisiana must be dismissed for lack of jurisdiction.

In his petition, Plaintiff alleges the State of Louisiana through the DPSC, as "[a]n employer[,] is liable pursuant to respondeat superior for the tortious acts committed against third parties by its employees during the course and scope of employment and while under

---

[196] *Id.*
[197] R. Doc. 54-1 at p. 37. Further, without identifying any particular policy, Defendants contend "[t]hroughout the investigation into contraband, from March 16-19, 2021, Defendants clearly complied with he prison policy in order to maintain the security, safety, and order of the facility." *Id.*

its control, direction and supervision pursuant to [Louisiana Civil Code articles] 2315, 2317, and 2320."[198] In their motion for summary judgment, Defendants argue Plaintiff's claim against the DPSC fails as a matter of law purely because "Plaintiff has provided no evidence to substantiate the claim that the Defendants' battered Plaintiff." [199] While the Court disagrees with the State's rationale, the Court will dismiss Plaintiff's respondeat superior claim.

"The State of Louisiana is immune from suit in federal court under the Eleventh Amendment."[200] "Sovereign immunity under the Eleventh Amendment bars actions for monetary relief in federal court against a State or state agency unless the State has consented to be sued."[201] "Generally, the State of Louisiana has not waived its immunity or consented to the exercise of federal judicial power in civil actions against it." [202] "Thus, in each unsanctioned instance of federal suit, the State or its agency must affirmatively waive its Eleventh Amendment immunity."[203] "To ensure the enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." [204] "This standard allows federal courts to order prospective relief and ancillary relief thereto where there exists a violation of federal law."[205]

The State of Louisiana has not waived its sovereign immunity for Plaintiff's respondeat superior claim against the DPSC. In fact, the Louisiana Governmental Claims Act explicitly provides, "no suit against the state or state agency or political subdivision shall

---

[198] R. Doc. 1-1 at p. 11.
[199] R. Doc. 54-1 at p. 38.
[200] *Able Sec. and Patrol, L.L.C. v. Louisiana*, 07-1931, 2010 WL 1294053, at *4 (E.D. La. Mar. 20, 2010).
[201] *Id.* (citing U.S. CONST. amend. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Ala. v. Pugh*, 438 U.S. 781, 782 (1978); *Richardson v. Southern Univ.*, 118 F.3d 450, 452 (5th Cir. 1997)).
[202] *Id.* (citing La. Rev. Stat. § 13:5106(A); *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991)).
[203] *Id.* (citing *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990); *Stem v. Ahearn*, 908 F.2d 1, 4 (5th Cir. 1990)).
[204] *Id.* (citing *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *Ex parte Young*, 209 U.S. 123 (1908)).
[205] *Id.* (citing *Frew*, 540 U.S. at 437).

be instituted in any court other than a Louisiana state court."[206] Fifth Circuit precedent likewise supports the conclusion that "the [S]tate of Louisiana ha[s] not statutorily expressed the intent to expose itself to suit in federal court and therefore did not expressly waive Eleventh Amendment immunity."[207] Further, Plaintiff has failed to allege any declaratory or injunctive relief in his petition against the State of Louisiana through the DPSC.[208] Although the State of Louisiana is not per se immune from declaratory or injunctive relief suits, Plaintiff asserts only a damages claim against the DPSC under a theory of respondeat superior.[209] Accordingly, Plaintiff failed to assert a claim for which relief can be granted against the State of Louisiana through the DPSC and the Eleventh Amendment bars federal jurisdiction over the claim.

This Court has found damages claims against the State of Louisiana that "inevitably involve the Louisiana public treasury . . . must be dismissed for lack of subject matter jurisdiction under the Eleventh Amendment."[210] "Claims against government officials in their individual capacities 'seek to impose individual liability upon a government officer for actions taken under color of state law,'"[211] because "[t]he Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under [Section] 1983."[212] "However, the Eleventh Amendment bars suits against state officials when the state is the real, substantial party in interest."[213] Thus, even though the

---

[206] La. R.S. § 13:5106(A) (2018).

[207] *Able Sec.*, 2010 WL 1294053, at *4 (citing *Fairley v. Stalder*, 294 Fed. App'x 805, 811 (5th Cir. 2008)).

[208] *See* R. Doc. 1-1.

[209] *Id.* at pp. 11–12.

[210] *Asante-Chioke*, 2023 WL 5630464, at *3.

[211] *Id.* at *4 (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

[212] *Hafer*, 502 U.S. at 30–31 (internal quotation marks omitted); *see also Asante-Chioke*, 2023 WL 5630464, at *4 ("In an individual capacity suit, government officials 'come to court as individuals, and the real party in interest is the individual, not the sovereign.'" (quoting *Lewis v. Clarke*, 581 U.S. 155, 163–64 (2017) (internal citations and quotation marks omitted))).

[213] *Asante-Chioke*, 2023 WL 5630464, at *4 (citing *Reyes v. Sazan*, 168 F.3d 158, 162 (5th Cir. 1999) (internal citation omitted)).

State does not raise a sovereign immunity defense against Plaintiff's claim in the instant motion for summary judgment, the State did not expressly waive sovereign immunity to his damages claim. These facts cause the Court to dismiss Plaintiff's claim against the State of Louisiana through the DPSC, sua sponte, for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.[214]

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment is **GRANTED** on the issues of qualified immunity with respect to Plaintiff's Section 1983 claims against the Defendant officers for excessive force and for bystander liability for failure to prevent an excessive use of force.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **DENIED** on the issues of qualified immunity with respect to Plaintiff's Section 1983 claims against the Defendant officers for unconstitutional conditions of confinement, bystander liability for failure to prevent unconstitutional conditions of confinement, and discretionary immunity with respect to Plaintiff's state law negligence claims against the Defendant officers.

**IT IS FURTHER ORDERED** that Plaintiff's claim against the State of Louisiana through the DPSC is **DISMISSED** for lack of subject matter jurisdiction.

---

[214] R. Doc. 54.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **DENIED AS MOOT** on the issue of Plaintiff's claims of battery against the Defendant officers and the State of Louisiana through the DPSC.[215]

New Orleans, Louisiana, this 13th day of March, 2024.

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[215] As discussed, Plaintiff's letter to the Court submitted on January 17, 2023 identifies a "State Court Battery" cause of action asserted against the Defendant officers but Plaintiff's petition filed in Louisiana state court does not state any claim of battery. *Compare* R. Doc. 15, *with* R. Doc. 1-1. Thus, the Court did not analyze the merits of Defendants' argument on whether qualified immunity shields the Defendant officers from liability on Plaintiff's purported battery claims and denies as moot the summary judgment motion on the issue of Plaintiff's battery claims against the Defendant officers and the DPSC. *See* R. Doc. 54-1 at pp. 33-35.